**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**UNITED STATES OF AMERICA,**

    **v.**                                                    **CRIM. NO. 2:11cr34-3**

**SHANI NURANI SHIEKH ABRAR,**

    **Defendant.**

## OPINION

This matter comes before the court on Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the Amended First Step Act of 2018 ("Motion"), ECF No. 1212, and his Supplemental Motion for Compassionate Release as Directed by the Court's Order ("Supplemental Motion"), ECF No. 1216. For the reasons explained below, Defendant has not demonstrated extraordinary and compelling reasons justifying his release, and the factors enumerated in 18 U.S.C. § 3553(a) weigh heavily against a sentence reduction. Defendant's Motion and Supplemental Motion are therefore **DENIED**.

### I. BACKGROUND

On July 8, 2013, the eighteenth (18th) day of trial, a jury found Defendant and two co-conspirators guilty of Counts One through Twenty-Six (Counts 1-26) of the Superseding Indictment. ECF No. 753. Count One charged Defendant with Conspiracy to Commit Hostage Taking Resulting in Death, in violation of 18 U.S.C.

§ 1203(a); Counts Two, Three, Four, and Five charged Defendant with Hostage Taking Resulting in Death, in violation of 18 U.S.C. §§ 1203(a) and 2; Count Six charged Defendant with Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c); Counts Seven, Eight, Nine, and Ten charged Defendant with Kidnapping Resulting in Death, in violation of 18 U.S.C. §§ 1201(a)(2) and 2; Count Eleven charged Defendant with Conspiracy to Commit Violence Against Maritime Navigation Resulting in Death, in violation of 18 U.S.C. § 2280(a)(1)(H); Counts Twelve, Thirteen, Fourteen, and Fifteen charged Defendant with Violence Against Maritime Navigation Resulting in Death, in violation of 18 U.S.C. §§ 2280(a)(1)(G) and 2; Counts Sixteen, Seventeen, Eighteen, and Nineteen charged Defendant with Murder Within the Special Maritime and Territorial Jurisdiction of the United States, in violation of 18 U.S.C. §§ 1111 and 2; Count Twenty charged Defendant with Piracy under the Law of Nations, in violation of 18 U.S.C. §§ 1651 and 2; Counts Twenty-One and Twenty-Six charged Defendant with Use, Carry, Brandish, and Discharge of a Firearm During a Crime of Violence, in violation of 18 U.S.C. §§ 924(c) and 2; and Counts Twenty-Two, Twenty-Three, Twenty-Four, and Twenty-Five charged Defendant with Use, Carry, Brandish, and Discharge of a Firearm During a Crime of Violence Causing Death, in violation of 18 U.S.C. §§ 924(c), 924(j), and 2. ECF No. 237. Following the eligibility phase and selection phase of trial, which lasted ten (10)

additional days, the jury recommended a sentence of Life
Imprisonment Without the Possibility of Parole on each of the
counts before it. ECF No. 837 at 5-10.

Sentencing was held before the undersigned district judge on
November 13, 2013. ECF No. 881. Consistent with the jury's
recommendation, the court sentenced Defendant to a total term of
Life plus eighteen (18) Life terms plus thirty (30) years, all to
be served consecutively, and to be followed by a five (5) year
term of supervised release. ECF No. 883 at 3-4. Defendant appealed
his conviction, ECF No. 893, but on April 3, 2015, the Fourth
Circuit affirmed this court's Judgment in all respects after
finding that the "district court gave [Defendant] the fair trial
that he deserved." ECF No. 958 at 4; see ECF Nos. 959, 961.

On February 1, 2016, Defendant filed a Motion to Appoint
Counsel "to [prepare] a post conviction remedy." ECF No. 965. The
court denied Defendant's request on March 10, 2016, because he did
not "assert[] a colorable claim for post-conviction relief," and
did not establish "exceptional circumstances" to "warrant
appointment of counsel for post-conviction proceedings."
ECF No. 968 at 2-4. Then, on July 21, 2016, Defendant submitted a
Petition for Writ of Mandamus "seeking an order compelling the
district court to appoint him counsel to assist [Defendant] in
filing a habeas motion," which was denied by the Fourth Circuit on
July 25, 2016. ECF Nos. 979, 980, 981. On December 12, 2016,

Defendant filed a Petition for Writ of Certiorari in the Supreme Court, ECF No. 1002, which was subsequently denied on April 17, 2017, ECF No. 1011.

After filing his first request subject to defect, on June 11, 2018, Defendant filed a Petition for Documents Without Prepayment. ECF No. 1027. The Petition for Documents Without Prepayment was denied, ECF No. 1028, as was Defendant's Petition for Reconsideration, ECF Nos. 1033, 1038. Defendant appealed to the Fourth Circuit, ECF No. 1039, which affirmed this court's orders, ECF Nos. 1047, 1048, 1051.

Then, on July 7, 2022, Defendant filed the instant Motion requesting that this court "modify his sentence to time served and immediately release him to a period of Supervised Release." ECF No. 1212 at 1.[1] The court directed Defendant to supplement his Motion "with a written explanation of how he ha[d] exhausted his administrative remedies," before it would consider his Motion. ECF No. 1214 at 1-2. On August 1, 2022, Defendant filed his Supplemental Motion, ECF No. 1216, and the United States was directed to file responsive pleadings, ECF No. 1220.[2] On

---

[1] This same day, July 7, 2022, Defendant filed a Motion for Appointment of Counsel. ECF No. 1213. The court denied Defendant's Motion for Appointment of Counsel on July 8, 2022. ECF No. 1214 at 2-3.

[2] With his Supplemental Motion for Compassionate Release as Directed by the Court's Order, Defendant filed a Supplemental

September 23, 2022, the United States filed its Response in
Opposition. ECF No. 1225. Defendant filed a Motion for Extension
of Time to Reply to the Government's Response on October 17, 2022.
ECF No. 1232. The court granted Defendant's request, ECF No. 1233,
but a Response was never filed. Having been fully briefed, this
matter is now ripe for judicial determination.

## II. EXHAUSTION

Before the court may consider a motion under 18 U.S.C.
§ 3582(c)(1)(A)(i), the defendant must have "fully exhausted all
administrative rights to appeal a failure of the Bureau of Prisons
["BOP"]to bring a motion on the defendant's behalf," or there must
have been a "lapse of 30 days from the receipt of such a request
by the warden of the defendant's facility." 18 U.S.C.
§ 3582(c)(1)(A). The Fourth Circuit has clarified that defendants
may satisfy this exhaustion requirement by "wait[ing] 30 days from
the date of their initial request to file a motion in the district
court," even if the warden has already responded to their request.
United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021)
(collecting cases). The court further clarified that the
exhaustion requirement "is a non-jurisdictional claim-processing
rule," and therefore "may be waived or forfeited." Id. at 130.

---

Motion for Appointment of Counsel. ECF No. 1217. The court again
denied this request on August 9, 2022. ECF No. 1220 at 1 n.1.

As the court previously determined, "Defendant allege[d] to have made a request for compassionate release to the warden of his facility 'several months ago . . . .'" ECF No. 1220 at 2 (quoting ECF No. 1216 at 1). Assuming this is accurate, more than thirty (30) days have passed since Defendant made his request. Moreover, "because there [wa]s some ambiguity in the records the government . . . received from BOP, the government waive[d] any exhaustion defense." ECF No. 1225 at 4 n.1. Therefore, the court assumes that Defendant has satisfied the threshold exhaustion requirement and will now address the merits of his Motion. See 18 U.S.C. § 3582(c)(1)(A).

### III. MERITS

For a court to reduce a defendant's sentence under § 3582(c)(1)(A)(i), it must find that "extraordinary and compelling reasons" justify such a reduction. The defendant bears the burden of showing that this requirement is satisfied. See, e.g., United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021); United States v. Noel, No. 3:08cr186-3, 2021 WL 1602402, at *2 (E.D. Va. Apr. 23, 2021) (Payne, J.). Even if a defendant carries his burden, a court may only reduce his sentence "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Any such reduction must also be "consistent with applicable policy

statements issued by the Sentencing Commission." Id.; see United States v. McCoy, 981 F.3d 271, 275-76 (4th Cir. 2020).

In McCoy, the Fourth Circuit held that, in the context of prisoner-filed § 3582(c)(1)(A) motions, "there currently exists no 'applicable policy statement'" because the Commission has not issued a policy statement since the passage of the First Step Act. 981 F.3d at 281-82 (alteration omitted). Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (alteration omitted) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)); see United States v. Davis, No. 21-6960, 2022 WL 127900, at *1-2 (4th Cir. Jan. 13, 2022) (holding district court abused discretion in determining that certain claims "categorically" could never "establish a sufficient reason for release"). In particular, the Fourth Circuit held that courts "may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair." McCoy, 981 F.3d at 285-86.

Whatever a defendant argues, the overarching purpose of the compassionate release mechanism guides district courts:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to

7

> introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances – when sufficiently extraordinary and compelling – than to society's interests in the defendant's continued incarceration and the finality of judgments.

United States v. Hargrove, 30 F.4th 189, 197 (4th Cir. 2022). Ultimately, therefore, the court must "balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other." See id.

Although the policy statement in United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 1B1.13 is no longer binding on this court in this case after the Fourth Circuit's decision in McCoy, the court finds that certain of its provisions remain "helpful guidance" in striking this balance. See McCoy, 981 F.3d at 282 n.7. For example, the court will still consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," U.S.S.G. § 1B1.13, and whether "[t]he defendant is . . . a danger to the safety of any other person or to the community," id. § 1B1.13(2), because these considerations remain highly relevant to whether a reduction in sentence is warranted in this case. In addition, "because U.S.S.G. § 1B1.13 addresses what is, in the medical context, an 'extraordinary and compelling reason' for release," the court will consider it when assessing the significance of Defendant's medical conditions.

See Hargrove, 30 F.4th at 197 (quoting United States v. High, 997 F.3d 181, 186 (4th Cir. 2021)).

## A. EXTRAORDINARY AND COMPELLING REASONS

Defendant contends that two (2) general matters constitute "extraordinary and compelling reasons" justifying his release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). First, Defendant points to the COVID-19 pandemic, including the "deadly threat" of the virus, ECF No. 1212 at 1, and his facility's inability to manage COVID-19, id. at 1, 3. Defendant also discusses his medical conditions and seems to imply that these make him more susceptible to the virus's effects. Id. at 3, 5-6. Secondly, Defendant directs the court's attention to his rehabilitation efforts while incarcerated. Id. at 7. The court will address each of these arguments in turn below.

## 1. COVID-19 Concerns and Defendant's Condition

Defendant first argues that "[t]he unprecedented, deadly threat of COVID-19" and its variants "could not have been foreseen at sentencing and poses extraordinary risks to [Defendant's] health." Id. at 1. Moreover, he asserts that his facility, USP Terre Haute, "is ill-equipped to contain the pandemic and prevent COVID-19 and its deadly variants from becoming a de facto death sentence." Id. Lastly, Defendant points to his suffering from Acute Kidney Injury and panic attacks, and asserts that "[p]ersons under stress (and particularly persons suffering from serious mental

9

health challenges like depression, schizophrenic disorders, anxiety and antisocial personality disorder) often develop compromised immune systems," making them more susceptible to COVID-related complications. Id. at 5.

### a. Legal Standard

"Fear of COVID doesn't automatically entitle a prisoner to release." United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021). Rather, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (Novak, J.) (emphasis added); see, e.g., Hargrove, 30 F.4th at 195-96, 200 (affirming order applying this standard). Thus, to demonstrate extraordinary and compelling reasons for release due to the COVID-19 pandemic, a defendant must at least demonstrate that "he is more at risk for an adverse outcome in prison than he would be if released." See United States v. Barbee, 25 F.4th 531, 533 (7th Cir. 2022). Defendant fails to make this showing.

### b. Particularized Susceptibility

Given the comprehensive healthcare Defendant is receiving, along with his vaccination and recovery from a previous infection,

10

Defendant is not particularly susceptible to serious illness from a future COVID-19 infection.

Defendant spends a substantial amount of time in his Motion arguing that his mental health conditions, including his suffering from panic attacks, make him particularly susceptible to COVID-19 and its severe effects.[3] Id. at 5. As Defendant correctly notes, the CDC recognizes that people with compromised immune systems and those suffering from mental health conditions can be "more likely to get very sick from COVID-19." CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

---

[3] Defendant also claims that he "suffers from Acute Kidney Injury (AKI)." ECF No. 1212 at 6. Defendant only provides a general description of potential complications from which individuals with this condition may suffer, but he does not illustrate how the condition impacts him personally. See id. Even more importantly, Defendant's medical records do not confirm this diagnosis. See ECF No. 1227-1 at 119 (noting CT scan finding that Defendant's liver, spleen, gallbladder, pancreas, adrenal glands, and kidneys were unremarkable in February 2021), 127 (noting ultrasound of Defendant's kidneys with normal results in December 2020); ECF No. 1227-2 at 9 (noting ultrasound of liver and kidneys with normal results in April 2022). Therefore, Defendant's claim that he suffers from AKI is without merit and irrelevant to the court's inquiry. However, even if the court were to consider it, the analysis would be unaffected because, at most, Defendant's AKI is a "chronic condition that can be managed in prison and thus [is] not a sufficient basis for compassionate release." United States v. Thompson, No. 3:19cr76, 2021 WL 2673049, at *2 (E.D. Va. June 29, 2021) (internal citation, alterations, and quotation marks omitted).

Defendant's medical records indicate that he has suffered from depression, anxiety, and night terrors, which, no doubt, are all serious mental health conditions. See ECF No. 1227-1 at 2-5, 94-95; ECF No. 1227-2 at 5. What is even more significant to the court, however, is that Defendant's medical records clearly demonstrate that he is receiving the comprehensive care and treatment he needs to manage these chronic conditions (and others) at his facility. See ECF No. 1227-1 at 2-5, 81-86 (list of ongoing and resolved medical issues being monitored by BOP), 94-97 (list of medications Defendant was prescribed from August 2020-August 2021); ECF No. 1227-2 at 5; see also United States v. Thompson, No. 3:19cr76, 2021 WL 2673049, at *2 (E.D. Va. June 29, 2021) (quoting United States v. Ayon-Nunez, No. 1:16cr130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020)) ("[I]t is generally true that 'chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.'"). This record cuts against any argument that the BOP cannot adequately care for Defendant, and further suggests that he is not particularly susceptible to the virus. Moreover, Defendant has made no showing that he would receive similar treatment outside of BOP custody; therefore, Defendant fails to show that "he is more at risk for an adverse outcome in prison than he would be if released." Barbee, 25 F.4th at 533.

12

Defendant's susceptibility argument is further weakened by his vaccination status. Defendant received two doses of the highly effective Pfizer BioNTech COVID-19 vaccine. ECF No. 1227. Though vaccination does not eliminate entirely an individual's potential for becoming seriously ill from a COVID-19 infection, inoculation exponentially decreases his risk. CDC, <u>Benefits of Getting A COVID-19 Vaccine</u>, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html; <u>see, e.g.</u>, <u>United States v. Sanders</u>, No. CR SAG-06-087, 2021 WL 1428546, at *3 (D. Md. Apr. 15, 2021) (holding that defendant's "vaccination status remove[d] his other medical conditions from the category of risk constituting an 'extraordinary and compelling reason,'" and collecting cases concluding the same); <u>United States v. Broadfield</u>, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order.").

Lastly, Defendant's successful recovery from a previous COVID-19 infection while in BOP custody also supports this inference. Defendant contracted COVID-19 in December 2020. ECF No. 1227-1 at 104. Although unvaccinated at the time, Defendant was asymptomatic. <u>Id.</u> at 28. When paired with the BOP's adequate provision of medical care, Defendant's successful recovery "undercuts the argument that he is particularly susceptible to

13

extreme illness or death from COVID-19, or that the [BOP] would be ineffective in managing his illness in the off-chance he contracts COVID-19 again." See United States v. Aqid, 555 F. Supp. 3d 279, 282 (E.D. Va. 2021) (Smith, J.).

In sum, the court recognizes that Defendant's medical conditions are potential risk factors for serious illness from a future COVID-19 infection. However, given Defendant's vaccination status, the comprehensive care he is receiving, and his recovery from a previous COVID-19 infection, the court finds that Defendant's conditions are not so severe as to render him particularly susceptible to serious illness or death from COVID-19. Instead, "it appears that the conditions on which [Defendant] bases his motion are 'chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release.'" United States v. Ferguson, No. 3:04cr13-1, 2021 WL 1701918, at *3 (E.D. Va. Apr. 29, 2021) (Payne, J.) (quoting Ayon-Nunez, 2020 WL 704785, at *2-3); see Thompson, 2021 WL 2673049, at *2-3 (denying a defendant's motion for compassionate release after finding that he was not particularly susceptible to a severe COVID-19 infection even with his chronic mental health conditions).

### c. Particularized Risk

Even if Defendant was particularly susceptible to COVID-19, the effect of the pandemic would not warrant his release because

14

Defendant does not face a particularized risk of contracting the virus at his facility, USP Terre Haute.

Current statistics illustrate that the BOP's ongoing mitigation efforts, including widespread vaccination, have significantly reduced Defendant's risk of contracting the virus at his institution. A large number of inmates and staff at USP Terre Haute have been inoculated against COVID-19 with vaccines[4] shown to be effective at preventing serious COVID-19 illness.[5] And as of February 16, 2023, USP Terre Haute had no active cases of COVID-19 among inmates and staff members.[6]

These numbers leave the court unconvinced that being released to home confinement or deported would afford Defendant significantly more protection than remaining at his institution, where the BOP is actively managing operations[7] to minimize the

---

[4] As of February 16, 2023, full inoculations were completed for 2,490 prisoners and 425 staff members at Terre Haute FCC, which is the complex that houses USP Terre Haute. BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/corona virus/. There are currently 1,266 prisoners at USP Terre Haute. BOP, USP Terre Haute, https://www.bop.gov/locations/institutions/thp/.

[5] CDC, Benefits of Getting a COVID-19 Vaccine, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[6] BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/.

[7] BOP, USP Terre Haute, https://www.bop.gov/locations/institutions/thp/ (noting modifications to prison operations due to COVID-19); BOP, COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guid e. jsp (describing modifications). Defendant states that USP Terre

spread of COVID-19. See Feiling, 453 F. Supp. 3d at 841-42 (denying motion for compassionate release where defendant "fail[ed] to demonstrate how his release on home confinement [would] significantly reduce his likelihood of contracting COVID-19").

In sum, the low prevalence of COVID-19 at Defendant's facility, particularly in light of the BOP's ongoing vaccination and mitigation efforts, does not subject Defendant to a particularized risk of contracting the virus at USP Terre Haute. See, e.g., United States v. Spencer, 521 F. Supp. 3d 606, 612 (E.D. Va. 2021) (Smith, J.) (denying motion where the defendant's facility had only two (2) active COVID-19 cases among inmates). Defendant claims that "Terre Haute is ill-equipped to contain the pandemic and prevent COVID-19 and its deadly variants from becoming a de facto death sentence," ECF No. 1212 at 1, but these numbers indicate otherwise.

---

Haute is unable to "practice any of the hygienic and social [distancing] techniques" that have been recommended by the CDC. ECF No. 1212 at 3. The court notes, however, that USP Terre Haute is currently operating at Level 1 due to the low transmission rate and high vaccination rate at the facility. BOP, COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid1 9_modified_operations_guide.jsp. If USP Terre Haute moves to Level 2 or Level 3, then increased safety measures will be implemented, as outlined in the BOP's Modification charts. Id. That being said, the BOP has a number of general modifications in effect, regardless of a facility's operational level, including daily sanitation, inmate testing, and face covering requirements. Id.

### d. Conclusion

Defendant has not demonstrated a particularized susceptibility to COVID-19, or that he faces a particularized risk of contracting the virus at USP Terre Haute. Although Defendant may suffer from certain medical conditions, this does not automatically entitle him to a sentence reduction. See, e.g., United States v. Inman, 583 F. Supp. 3d 1117, 1122-24 (M.D. Tenn. 2022) (finding a defendant's various medical conditions "combined with the COVID-19 pandemic" did not amount to extraordinary and compelling reasons because the defendant was vaccinated); Thompson, 2021 WL 2673049, at *2-3 (concluding that a defendant's chronic mental health conditions "were not a sufficient basis for compassionate release" even in the midst of the COVID-19 pandemic). Defendant has not demonstrated that the BOP is unable to adequately care for him while imprisoned, and has not explained how he will receive any of the specialized care he requires should the court reduce his sentence. He also has not demonstrated that he faces a substantially greater risk of contracting the virus at his institution than he would if released to home confinement or deported. In sum, Defendant failed to establish that "he is more at risk for an adverse outcome in prison than he would be if released," Barbee, 25 F.4th at 533, and therefore he has not shown extraordinary or compelling reasons justifying a sentence

17

reduction on the basis of his individual characteristics and the COVID-19 pandemic.

## 2. Defendant's Rehabilitation

Defendant also argues that his rehabilitation while incarcerated justifies a sentence reduction under § 3582(c)(1)(A)(i). See ECF No. 1212 at 7. In taking this stance, Defendant only focuses on his voluntary involvement in the Life Connections Program and discusses the program's general aims and objectives. See id.

As it assesses Defendant's postconviction conduct, the court first notes that rehabilitation, alone, does not constitute an "extraordinary and compelling reason" for a reduction in sentence. 28 U.S.C. § 994(t). But the court recognizes that it may consider rehabilitation and other postconviction conduct, when paired with other factors, as an "extraordinary and compelling reason[]" for relief. 18 U.S.C. § 3582(c)(1)(A)(i); see Davis, 2022 WL 127900, at *1 (quoting McCoy, 981 F.3d at 286 n.9) ("[S]uccessful rehabilitation efforts can be considered as 'one among other factors.'"). On these facts, however, Defendant's rehabilitation argument does not articulate an extraordinary or compelling reason for a reduction in sentence in light of the full considerations

herein of other matters raised by Defendant and the factors under 18 U.S.C. § 3553(a).[8]

While the court commends Defendant for taking steps to improve himself, including by participating in the Life Connections Program, his record is not "extraordinary." Simply put, "[p]risoners are <u>supposed</u> to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary." <u>United States v. Logan</u>, 532 F. Supp. 3d 725, 735 (D. Minn. 2021). Based on the record before the court, it is not even clear that Defendant has met the baseline expectation because he has provided <u>no</u> evidence to demonstrate the personal impact that the Life Connections Program has had on him. Furthermore, the court has no knowledge of his disciplinary record, other classes he has taken, or employment while incarcerated. <u>See</u> ECF No. 1212 at 7; <u>cf.</u> <u>United States v. Burale</u>, No. 2:11cr34-13, 2022 WL 1439663, at *6-7 (E.D. Va. May 6, 2022) (Smith, J.), <u>aff'd</u>, No. 22-6582, 2022 WL 4181872 (4th Cir. Sept. 13, 2022) (finding defendant satisfied the mere baseline expectation by completing twenty (20) educational courses, having a job while incarcerated, completing a drug education program, and having no disciplinary infractions for

---

[8] <u>See</u> <u>infra</u> Part III.B

several months). With so little evidence of personal growth, it is impossible for the court to find that Defendant's rehabilitation efforts as presented are "extraordinary" in any way.

### B. SECTION 3553(a) FACTORS

A court may only reduce a defendant's sentence under § 3582(c)(1)(A) "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable . . . ." 18 U.S.C. § 3582(c)(1)(A). That said, "[s]ection 3582(c)(1) permits a district court to reduce a sentence in 'any case' – not just cases where a sentence has been substantially served; not just in cases involving low-level or non-violent offenses." United States v. Kibble, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J., concurring) (citing United States v. Gonzales, 520 U.S. 1, 5 (1997)). Even if Defendant had presented "extraordinary and compelling reasons," the court finds that a reduction in sentence would not be proper in this case, as the § 3553(a) factors weigh heavily against Defendant's release. See Kibble, 992 F.3d at 330-32 (majority opinion affirming denial of a motion for compassionate release where the defendant's "health conditions . . . amounted to extraordinary and compelling circumstances," but "the § 3553(a) factors counseled against a sentence reduction").

First, the court acknowledges and appropriately credits Defendant's efforts to rehabilitate himself, including by

participating in the Life Connections Program.[9] However, the court observes that Defendant's offense conduct was extremely serious, and that Defendant has served roughly only ten (10) years of his multiple Life sentences. Kibble, 992 F.3d at 331 (recognizing that district courts are "entitled to consider the amount of time [defendants] ha[ve] served as one factor in the § 3553(a) analysis" and citing United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020) and United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020)). While the amount of time remaining on Defendant's sentence is not a dispositive factor, at this juncture, Defendant's steps towards rehabilitation do not outweigh the seriousness of Defendant's offense conduct that gave rise to the sentence he is serving. See, e.g., United States v. Bowser, 539 F. Supp. 3d 572, 576-77 (E.D. Va. 2021) (Smith, J.) (denying motion for compassionate release, in part, on this basis).

Defendant's conviction stems from his major participation in a violent act of piracy. On February 18, 2011, off the coast of Somalia, Defendant and armed co-conspirators attacked the Quest, a United States flagged sailing vessel, intending to seize it and hold its crew for ransom. ECF No. 1221 at 8. The captors bound and held four (4) Americans on board at gunpoint. Id. at 8-9. Upon learning of the attack, the United States Navy responded to rescue

---

[9]   See supra Part III.A.2. (discussing Defendant's rehabilitation).

the Americans. Id. After some negotiation, on February 22, 2011, co-conspirators opened fire on the rescuers with a rocket-propelled grenade, and a firefight ensued. Id. at 9. Before the Navy could rescue the hostages, Defendant and two co-conspirators murdered the four (4) hostages by firing their automatic weapons multiple times at each victim. Id. at 9-10.

At sentencing, the undersigned district judge focused heavily on the nature and circumstances of the offense, including Defendant's role as a "major shooter." ECF No. 936 at 23. The court found that this sentencing factor "couldn't weigh any more heavily against [Defendant] than it does, not only the jury's verdict, but the evidence that supported the jury's verdict and the heinous and callous nature of these crimes." Id. Even today, no words can aptly describe the true gravity of the crimes committed by Defendant and his co-conspirators, as well as the lasting effect on the victims' family members and friends, who testified at the trial. See ECF No. 911 at 6-32 (witness testimony of Emily Elizabeth Sem, whose father and stepmother were among the victims killed); ECF No. 914 at 26-34 (witness testimony of Cynthia Macay, whose sister was a victim); ECF No. 917 at 121-128 (witness testimony of James Riggle, whose brother was a victim); ECF No. 921 at 71-83 (witness testimony of Ann Kray, whose sister was a victim); ECF Nos. 928 at 49-226, 929 at 7-102 (testimony of the victims' families and friends during the selection phase of trial). Therefore, the court

is satisfied that Defendant's multiple Life sentences are necessary "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,]" to afford adequate deterrence to criminal conduct[,]" and most importantly, "to protect the public from further crimes of the Defendant." 18 U.S.C. § 3553(a)(2)(A)-(C) (emphasis added).[10]

In sum, it goes without saying that Defendant's sentence remains "sufficient, but not greater than necessary," to achieve the aims of 18 U.S.C. § 3553(a).

## IV. CONCLUSION

Based on the foregoing, and having considered the effect of McCoy on Defendant's sentence, all the factors under 18 U.S.C. § 3553(a), and Defendant's offense conduct, intervening law, current condition, and rehabilitation while incarcerated, Defendant's Motion, ECF No. 1212, and Supplemental Motion,

---

[10] The court would note that co-Defendants Burhan Abdirahman Yusuf (2:11cr34-11), Abdi Jama Aqid (2:11cr34-12), and Ahmed Sala Ali Burale (2:11cr34-13) also filed motions for compassionate release and/or sentence reductions. The court denied each of these motions, based largely on the heinous nature of the crimes committed. See ECF No. 1208 (Order denying Yusuf's Motion for Compassionate Release); ECF No. 1162 (Order denying Aqid's Motion for Compassionate Release); ECF No. 1203 (Order denying Burale's Motion for a Reduction of Sentence). Therefore, the court's denial of Defendant's Motion is consistent with these earlier denials and the sentencing factors enumerated in 18 U.S.C. § 3553(a).

ECF No. 1216, are **DENIED**. The Judgment entered on November 13, 2013, ECF No. 883, remains in full force and effect.

The Clerk is **DIRECTED** to forward a copy of this Opinion to Defendant, the United States Attorney at Norfolk, and the Bureau of Prisons.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

February 16, 2023